NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0539n.06

No. 21-5323

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Nov 24, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JAMES EARL SMITH, | ) | |
| | ) | OPINION |
| Defendant–Appellant. | ) | |
| | ) | |

Before: MOORE, GRIFFIN, and MURPHY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** James Earl Smith, who pleaded guilty to attempted marijuana possession, possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm as a felon, appeals his 144-month sentence as procedurally and substantively unreasonable. He flags two alleged mistakes made by the district court: its failure to recognize its discretion to vary from the Sentencing Guidelines, especially considering marijuana's legal status in some states; and its reference to an initiative involving increased prosecution of firearm offenses. We **AFFIRM** the district court's sentence.

## I. BACKGROUND

Two undercover agents made a controlled purchase of firearms from Smith. R. 39 (PSR at 5) (Page ID #87). One week later, Smith met with undercover agents to exchange a firearm for a half pound of "prop" (imitation) marijuana. *Id.* at 6 (Page ID #88). After completing the marijuana-for-gun transaction, agents took Smith into custody. *Id.*

A federal grand jury indicted Smith for attempting to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c); and knowing possession of firearms as a felon, in violation of 18 U.S.C. § 922(g)(1). R. 2 (Indictment at 1–2) (Page ID #3–4). Smith pleaded guilty to all three offenses. R. 28 (9/4/2020 Order on Change of Plea) (Page ID #42); R. 35 (10/16/2020 Order on Change of Plea) (Page ID #56).

The Presentence Report, to which Smith did not object, calculated Smith's total offense level at 23. R. 39 (PSR at 8) (Page ID #90). Smith had a criminal history category of V. *Id.* at 12 (Page ID #94). With that total offense level and criminal history category, Smith had a guideline imprisonment range of 84 months to 105 months for the attempted-distribution and felon-in-possession charges, along with a consecutive five-year mandatory-minimum sentence for his violation of 18 U.S.C. § 924(c). *Id.* at 17 (Page ID #99). Smith made no objection to the factual statements or guidelines calculations in the PSR. R. 41 (Def. Position re: Sentencing Factors) (Page ID #108).

The district court began the sentencing hearing by adopting the PSR. R. 49 (Sent'g Tr. at 3) (Page ID #132). The government recommended that Smith receive a sentence of 144 months: 84 months for the felon-in-possession and possession-with-intent-to-distribute charges, plus the five-year mandatory minimum for possession of a firearm in furtherance of a drug-trafficking crime. *Id.* at 4 (Page ID #133).

Smith argued that the district court should reduce Smith's sentence from 144 months to ten years due to many states having provided legal status for marijuana. R. 49 (Sent'g Tr. at 7–13, 15–16) (Page ID #136–42, 144–45). The district court declined to vary downward, citing

marijuana's illegality both federally and in Tennessee, and saying, "I don't want anybody to think this is a marijuana case. It's not a marijuana case. It's a gun case, and it's possession of a firearm in furtherance of a drug trafficking crime." *Id.* at 13 (Page ID #142). The district court added that it evaluated marijuana law "as it exists today." *Id.* at 14 (Page ID #143). Later in the proceeding, the district court opined on the importance of following the law, saying: "We want to follow the law. And if the law is changed, we'll follow it when it's changed." *Id.* at 52 (Page ID #181).

One other incident of note occurred during sentencing. While discussing deterrence, the district court mentioned a "Richmond, Virginia" study. R. 49 (Sent'g Tr. at 44) (Page ID #173). The district court implied that this study demonstrated that increased awareness of the illegality of firearm possession as a felon led to a decrease in the illegal use and possession of firearms. *Id.* The district court apparently referred to "Project Exile," a Richmond-based, law-enforcement initiative involving aggressive prosecution of firearms offenses. *See United States v. Venable*, 666 F.3d 893, 897 (4th Cir. 2012).

After the district court entered its judgment, Smith timely appealed. R. 46 (Notice of Appeal) (Page ID #125).

## II. DISCUSSION

### A. Standard of Review

We review sentencing decisions for procedural and substantive reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A defendant need not raise a substantive-reasonableness claim before the district court to preserve it. *United States v. Freeman*, 640 F.3d 180, 185 (6th Cir. 2011). But if a defendant does not object to an alleged procedural deficiency at a sentencing hearing, those unpreserved arguments receive plain-error

3

review. *Id.* at 186. After announcing a proposed sentence, the district court must "ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). If a party fails to object, plain-error review applies to any unpreserved procedural-reasonableness arguments. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).

The parties dispute whether Smith preserved either of the procedural issues that he raises before us. The government argues that we should review for plain error. Smith counters with abuse-of-discretion review. We address these positions as they relate to each issue.

## B. Analysis

### 1. Procedural Unreasonableness

#### a. "Follow the Law"

Smith argues that the district court declined to consider Smith's argument that the district court should show leniency because some states have legalized marijuana and because the federal government usually has declined to prosecute federal marijuana crimes in those states. This, Smith contends, was an abuse of discretion because the district court treated the sentencing guidelines as mandatory, reflected by the district court's multiple references to its need to "follow the law."

We review this claim for abuse of discretion because Smith properly preserved the objection below. The district court, consistent with *Bostic*, called for objections that were "not previously raised." R. 49 (Sent'g Tr. at 59) (Page ID #188). Smith's attorney had already engaged in an extended colloquy with the district court concerning the requested marijuana variance. This colloquy "previously raised" the objection to the district court's failure to consider marijuana's legal status in certain states. *See United States v. Blackie*, 548 F.3d 395, 398 (6th Cir. 2008)

("We review for reasonableness [defendant's] claim that the district court failed to consider his family ties and responsibilities at sentencing *because he had raised the issue prior to and during the sentencing hearing*, thus preserving it for appeal." (emphasis added)).

Turning to the merits, we conclude that Smith's argument fails. The district court's references to "following the law" are distinguishable from the language leading to reversal in the cases that Smith cites. In those cases, the district judges believed that they could not vary from the Guidelines at all. *See, e.g.*, *United States v. Camacho-Arellano*, 614 F.3d 244, 248 (6th Cir. 2010); *United States v. Johnson*, 553 F.3d 990, 992 (6th Cir. 2009). Here, the district court did not say that it *could* not deviate from the guidelines. Instead, it explained that it *would* not. The district court said that "the marijuana is collateral here," R. 49 (Sent'g Tr. at 12) (Page ID #141) and that "[the case is] not a marijuana case. It's a gun case." *Id.* at 13 (Page ID #142); *see also id.* at 13, 14, 37, 43, 45 (Page ID #142, 143, 166, 172, 174). The district court did at one point state that "We don't go on what the law might be in the future. We handle the law as it exists today." *Id.* at 14 (Page ID #143). But that referenced the district court's willingness to reconsider its decision if Congress legalized marijuana federally, not its unwillingness to consider the fact that marijuana was the drug at issue. The idea that the district court mechanically applied the Sentencing Guidelines is belied by the extended colloquy that the district court engaged in concerning Smith's argument for a downward variance or lenity. *Id.* at 5–17 (Page ID #134–46). Even viewed in the light most favorable to Smith, this "misstatement" of the judge's role would not require reversal. *United States v. Cherry*, 487 F.3d 366, 373 (6th Cir. 2007) (quoting *United States v. Bolden*, 479 F.3d 455, 468 (6th Cir. 2007)). The district court thus did not abuse its discretion by failing to account for marijuana's legal status in some jurisdictions.

### b. Project Exile

Smith argues that the district court abused its discretion by apparently discussing Project Exile, a law-enforcement initiative involving aggressive prosecution of firearms offenses. Smith points to empirical criticism of Project Exile, saying that the district court improperly mentioned a study that lacks empirical support. The district court relied on the "Richmond, Virginia study" in a limited context, however, pointing to it to show that "laws have a good effect" in incentivizing deterrence. R. 49 (Sent'g Tr. at 44) (Page ID #173).

Because we would affirm the district court under either abuse-of-discretion or plain-error review, we need not decide the standard of review. Smith argues that he had no opportunity to object to the apparent reference to Project Exile at the sentencing hearing because the district court did not actually ever identify the study such that defense counsel could present tailored objections. We forgive a failure to object when a district court, in a hearing, does not mention the grounds for its eventual ruling. *United States v. Carpenter*, 702 F.3d 882, 884 (6th Cir. 2012) (declining to apply a plain-error standard where defendant had no opportunity to object to substance-testing condition that the district court did not mention at sentencing hearing); *United States v. Richardson*, 535 F. App'x 517, 518 (6th Cir. 2013) (per curiam) (applying abuse-of-discretion standard where defendant had no "meaningful opportunity" to object); *United States v. Logins*, 503 F. App'x 345, 348 (6th Cir. 2012) (declining to apply plain-error standard where defendant had no opportunity to object at hearing). Because Smith's claim would fail under either standard of review, we need not determine whether these cases apply.

Smith argues that the district court improperly invoked Project Exile because its effects do not support the claim that harsher enforcement of gun laws has a deterrent effect. Smith argues

that statistical analyses of Project Exile show no effect at best, and discriminatory impact at worst. *See* Pet'r Br. at 17–22 (citing, inter alia, David E. Patton, *Criminal Justice Reform and Guns: The Irresistable Movement Meets the Immovable Object*, 69 EMORY L.J. 1011 (2020)).

Regardless of these critiques' strengths, Smith's claim fails because the district court did not base Smith's sentence on Project Exile's findings. Rather, the district court mentioned a Richmond, Virginia study, which may have been Project Exile, as one part of one factor of the sentencing decision. This opaque reference in a few lines of the transcript, in the context of a discussion of general deterrence, is not an abuse of discretion. *See United States v. Lopez Paniagua*, 828 F. App'x 307, 310 (6th Cir. 2020) (excusing a district court's "passing remark" concerning likelihood of recidivism of those involved in organized crime when there was no evidence that this remark had "any impact on the district court's sentencing decision.").

### 2. Substantive Unreasonableness

Finally, Smith challenges the substantive reasonableness of his sentence. "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)). Unlike procedural-reasonableness review, which asks whether a district court considered the relevant factors, substantive-reasonableness review looks to whether the district court imposed a sentence that failed to reflect those factors. *Camacho-Arellano*, 614 F.3d at 247 n.1. We presume that sentences within a defendant's guidelines range are substantively reasonable. *United States v.*

*Pirosko*, 787 F.3d 358, 374 (6th Cir. 2015).  As mentioned above, we review these challenges for an abuse of discretion even if the appellant did not raise them below.  *Freeman*, 640 F.3d at 185.

Smith argues that the district court gave an unreasonable amount of weight to all of the § 3553(a) factors[1] by failing to understand that it could vary from the Guidelines based on policy disagreements.  Echoing his arguments above, Smith contends that the district court both did not recognize that defendants charged with marijuana-based crimes may be prosecuted differently in states that have legalized the drug and relied on "an outdated study with questionable results"— again, presumably Project Exile—to suggest mistakenly that harsh gun sentences effectively deter crime.  *See* Pet'r Br. at 24–25.

Because Smith received a sentence within his guidelines range, R. 49 (Sent'g Tr. at 4, 56) (Page ID #133, 185), we presume his sentence was substantively reasonable.  The fact that a district court may disagree with the sentencing guidelines for policy reasons does not mean that it must. *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011).  Smith fails to show that the district court believed itself unable to vary from the Guidelines on policy grounds.  To the contrary, the district court considered and rejected Smith's proposed variance, rejecting it so as to "avoid unwarranted sentencing disparity."  *See* R. 49 (Sent'g Tr. at 51) (Page ID #180).  The district court said that it preferred a system in which judges "follow the law" to "one where it depends on who you know and what you say that day and how somebody individually feels," *Id.* at 31 (Page ID #160), but added that it would not "blindly" apply the law.  *Id.* at 30 (Page ID #159).  This was not

---

[1]Those factors include, inter alia, the nature and circumstances of the offense, the need for the sentence imposed to reflect the offense's seriousness and to deter others, the kinds of sentences available, the need to avoid unwarranted sentence disparities, and the need to provide restitution to any victims.  18 U.S.C. § 3553(a).

an abuse of discretion. Furthermore, the brief, opaque reference to what may have been Project Exile also does not render the sentence at the lower end of the guidelines range substantively unreasonable.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's sentence.